IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. WOSOTOWSKY, ) | |
| Petitioner, ) | Civil Action No. 13-1613 |
| ) | Criminal Action No. 2:11-203 |
| ) | |
| v. ) | Senior District Judge |
| ) | Maurice B. Cohill, Jr. |
| ) | |
| UNITED STATES OF AMERICA ) | |
| Respondent. ) | |

## OPINION

Pending before the Court is Petitioner, John D. Wosotowsky's (hereinafter "Petitioner" or "Wosotowsky") *pro se* Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 46] filed on November 8, 2013. In his Petition, Wosotowsky claims that he should be resentenced due to the following four assertions:

1. There was insufficient evidence to support a 4-level enhancement for violation of the securities law. Therefore, the 4-level enhancement should be dismissed as a matter of law.

2. Pursuant to 18 U.S.C. § 3664, there were only three victims of Wosotowsky's crime, not over 10 victims, and therefore, Wosotowsky's base offense level should be subject to a two-level reduction. Petitioner also asserts that this error makes the Plea Agreement invalid.

3. The Court abused its discretion in denial of downward departure from sentence pursuant to Section 5K2.13 of the United States Sentencing Commission Guidelines (Nov. 1, 2014).

1

4.  That Wosotowsky's attorneys, Michael Sherman ("Sherman") and Jay Finkelstein ("Finkelstein") were ineffective at decisive moment in his case, thus causing Wosotowsky to be the subject of "Ineffective Assistance of Counsel."

While Wosotowsky freely admits his guilty role in the criminal scheme for which he was sentenced, he asserts his sentence of 97 months imprisonment without gambling addiction treatment is erroneous and unjust.

## I. Facts

John D. Wosotowsky was the subject of an September 12, 2011, two-count information in which the United State's Attorney charged him with Mail Fraud under 18 U.S.C. § 1341 and False Income Tax Return under 26 U.S.C. § 7206(1) [ECF No. 1]. Wosotowsky was employed as a Financial Advisor and a Financial Services Representative by MetLife Insurance Company ("MetLife") from September 2000 through May 2010 [ECF No. 1 at 1]. He was authorized and licensed to sell MetLife's insurance and investment products and programs to individuals located in Western Pennsylvania [ECF No. 1 at 1]. Wosotowsky also maintained a business known as Equity I & R, which was wholly owned by Wosotowsky [ECF No. 1 at 1-2].

From in or around September 1999 and continuing thereafter until May 2010, Wosotowsky approached clients with MetLife financial investment products and misrepresented to them that Equity I & R was a clearing house or a transfer company for MetLife, that Equity I & R provided safe and secure 'MetLife" financial investment products with high rates of return, and that all of these financial investment products were under the umbrella of MetLife [ECF No. 1 at 2-3]. In furtherance of the scheme Wosotowsky changed the actual addresses of the victim clients on file

with MetLife to addresses which were under the exclusive control of Wosotowsky and forged their names on transactions that directed money to an Equity I & R account [ECF No. 1 at 3]. Wosotowsky mailed to victim clients false, fictitious, and fraudulent financial statements [ECF No. 1 at 4]. Wosotowsky used the monies obtained for his own personal benefit [ECF No. 1 at 4].

On or about April 15, 2008 Wosotowsky willfully filed a false tax return, which stated an Adjusted Gross Income ("AGI") of $97,686, whereas he then knew and believed that he had an AGI of greater than the amount sworn to in his 2008 tax return [ECF No. 1 at 6].

On October 6, 2011 Wosotowsky plead guilty to Counts 1 and 2 in open court at a Change of Plea hearing and submitted his signed plea agreement to the Court [ECF No. 7]. At the sentencing hearing on February 14, 2012 the Court denied Wosotowsky's requests for departure and variance. He was sentenced to imprisonment for a term of ninety-seven (97) months at Count 1 and imprisonment for a term of thirty-six (36) months at Count 2, such terms to be served concurrently. Wosotowsky was ordered to make restitution to victims in a total amount of $2,293,045.66, and he was ordered to voluntarily forfeit to the United States $16,000.00 in U.S. Currency and $47,696.71 formerly contained in a Citizens Bank account [ECF No. 30].

Wosotowsky filed a timely notice of Appeal contesting the 4-level enhancement for a violation of securities law on February 28, 2012. The ability to file this appeal was a negotiated term as an exception to his waiver of appeal in his plea agreement. On June 28, 2013 his appeal was denied by the Third Circuit Court of Appeals, and the Judgment of the District Court was affirmed. Wosotowsky filed this Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 46] on November 8, 2013. The Government filed its Response to the Motion [ECF No. 51] on February

14, 2014 asserting that the Motion should be denied.

Wosotowsky is an admitted compulsive gambler and alcoholic who claims his addictions led him to his criminal activity to defraud his clients out of more than two million dollars.

## II. **Standard of Review**

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. U.S. v. Cannistraro, 734 F.Supp 1110, 1119 (D. N.J. 1989), aff'd 919 F.2d 137 (3d. Cir. 1990), cert den'd 500 U.S. 916 (1991). Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . " 28 U.S.C. § 2255(a). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. U.S., 368 U.S. 424, 428 (1962)).

A district court considering a Section 2255 motion "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record," U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), and a court "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief."

Booth, 432 F.3d at 546 (citing U.S. v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005)). However, the final disposition of a Section 2255 motion lies with the discretion of the trial judge, see Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a Section 2255 motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008) (citing Forte, 865 F.2d at 62).

"Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (internal quotations omitted). Moreover, "if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show 'cause' excusing his procedural default and 'actual prejudice' resulting from the alleged error or violation." Henry v. U.S., 913 F.Supp. 334, 335 (M.D. Pa. 1996), aff'd 96 F.3d 1435 (3d Cir. 1996); see also U.S. v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) (holding that the "cause and prejudice" standard set forth in U.S. v. Frady, 456 U.S. 152 (1982) "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"); Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that an "ineffectiveness" claim can be brought in a collateral proceeding under § 2255 regardless of whether the same issue could have been addressed on direct appeal); DeRewal, 10 F.3d at 104. Finally, the collateral remedy available to prisoners under § 2255 "does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). "The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental

defect which inherently results in a complete miscarriage of justice'." Id. (quoting Hill, 368 U.S. at 428).

III **Legal Analysis**

### A. Four Level Enhancement Pursuant to Section 2B1.1(b)(17)(A)

The United States Probation Office prepared a presentence investigation report which recommended a 4-level enhancement in base offense level pursuant to U.S.S.G § 2B1.1(b)(17)(A),[1] for offense conduct by a broker involving a violation of securities law. The applicable provision reads as follows:

> If the offense involved –
> (A) a violation of securities law and, at the time of the offense, the defendant was (i) an officer or a director of a publicly traded company, (ii) a registered broker or dealer, or a person associated with a broker or dealer; or (iii) an investment adviser or a person associated with an investment adviser . . . increase by 4 levels.

Wosotowsky challenged this enhancement at Sentencing, and an exception was carved into Wosotowsky's Plea Agreement that would allow him to file a direct appeal on this issue. At the Sentencing Hearing the District Court concluded a 4-level enhancement for a violation of a securities law applied in this case and the enhancement caused Wosotowsky's guideline range to change from 63 to 78 months' imprisonment to 97 to 121 months' imprisonment. The District Court sentenced Wosotowsky to 97 months' imprisonment.

---

1 Note the PSI at Paragraph 32 assigns the 4-level enhancement under U.S.S.G. § 2B1.1(b)(18)(A)(iii). However, the Guidelines Manual, effective November 1, 2010, which the probation officer purports to have used does not contain a provision at § 2B1.1(b)(18)(A)(iii). We believe the provision to which the probation officer refers is § 2B1.1(b)(17)(A)(iii).

Wosotowsky now challenges (and has already challenged on direct appeal) that the District Court failed to state a proper basis for the 4-level enhancement because it did not identify either a "specific violation of securities law," as that term is defined in the Guidelines, or the conduct that supported the enhancement. The Government's Response [ECF No. 51] to this assertion is that there is a procedural bar to collateral re-litigation of the same issue. "It is well established that a § 2255 petition cannot be used to re-litigate questions which were raised and considered on direct appeal." United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009). Furthermore, once an appellate court "has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." Washington v. United States, 484 F.Supp. 2d 858, 862 (D.C. Ill. 2007).

The Appellate Court took great pains in drawing out the proximal relation between Wosotowsky's actions in his fraudulent scheme to the violation of the Securities Law under 18 U.S.C. §§ 1348, 1350, the Securities Exchange Act of 1934, and "securities law" as defined by the Guidelines. More specifically, the Third Circuit notes that the Government pointed out during the Sentencing Hearing, that the definition of "security" includes any "investment contract." 15 U.S.C. § 78c(a)(10). The Third Circuit agrees with the Government's evaluation and states that the Supreme Court has defined 'investment contract' as follows:

> '[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interest in the physical assets employed in the enterprise. SEC v. Howey, 328 U.S. 293, 298-99 (1946).

7

The Third Circuit found that Wosotowsky's scheme fits within the definition set forth by the Supreme Court and thus Wosotowsky's scheme was a violation of Rule 10b-5 [See Appellate Opinion at ECF 45-2]. Furthermore, Wosotowsky's claim that the District Court failed to state a proper basis for the 4-level enhancement because it did not identify either a specific "violation of the securities law," as that term is defined in the Guidelines, or the conduct that supported the enhancement, also lacked merit according to the Third Circuit. The Third Circuit stated in its opinion that the District Court's statement: "As far as I'm concerned, what we have here is a broker and he was dealing with securities, and the manner in which he did it was a violation of securities law. So I make a finding that the enhancement does apply in this case." This, coupled with the Government's statements during sentencing on the record is sufficient support for the District Court's conclusion that Wosotowsky was a broker who violated the securities law and thus an 4-level enhancement is appropriate under U.S.S.G. § 2B1.1(b)(17)(A) [ECF No. 45-2 at 5]. This Court will not reconsider the Third Circuit's Opinion/Ruling.

**B. Two Level Enhancement Pursuant to 2B1.1(b)(2)(A); Denial of Downward Departure Pursuant to Section 5K2.13**

Wosotowsky asserts the following two grounds in support of his Motion to Vacate his sentence. The Government's response to both arguments is that Wosotowsky waived his right to file the Motion to Vacate in his plea agreement therefore his arguments are moot.

Wosotowsky claims that the District Court applied a two-level enhancement to Wosotowsky's base offense level pursuant to Guideline's section 2B1.1(b)(2)(A) for more than 10 victims of the crime. The provision of the Sentencing Guidelines reads as follows:

(b) Specific Offense Characteristics

8

(2) (Apply the greatest) If the offense –
(a) (i) involved 10 or more victims; or (ii) was committed through mass-marketing, increase by 2 levels.

Wosotowsky protests this 2-level enhancement and asserts there were only three victims of his scheme. More specifically, he claims that the victims of the crime were MetLife, Allianz, and Princor not the individual victims who were defrauded out of their monies. Wosotowsky objects to the Court considering 25 different families affected by the crime because they were all refunded their losses by the aforementioned companies [ECF No. 46-1 at 14]. Furthermore, the restitution ordered by the Court is only directed to be paid to the three companies and not the families [ECF No. 46-1 at 14]. Therefore, Wosotowsky asserts that the 2- level enhancement under 2B1.1(b)(2)(A) for 10 or more victims does not apply where the families have not suffered loss.

Wosotowsky also strongly urges this court to reconsider the Motion made by Attorney Finkelstein, which sought a downward departure under U.S.S.G. § 5K2.13 for Wosotowsky's diminished mental capacity due to his gambling and alcohol addiction.

The Guidelines Provision reads as follows:

Diminished Capacity (Policy Statement)
A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

In his Motion to Vacate, Wosotowsky vigorously argues this point. He states time and time again that the Court cannot acknowledge his gambling addiction on the record and then deny its influence on the defendant when he committed the crime [ECF No. 46-1 at 29].

9

Therefore, his sentence should reflect a reduction in offense level by two-levels because of his diminished capacity, which in turn would cause a reduction in his sentence. In addition, he strongly advocates for a change in detention facility to a facility that can address his gambling addiction [ECF No. 46-1 at 30]. In summary, Wosotowsky asserts the Court abused its discretion when denying the downward departure and he felt the Judge's recommendation to the Bureau of Prisons to place him in facility where he could receive addiction counselling was not persuasive enough [ECF No. 46-1 at 41-42]. Wosotowsky states the purpose of prison is rehabilitation and he has been in prison for two years with no treatment towards rehabilitation of the addiction that caused him to commit the crime [ECF No. 46-1 at 43-44].

### a. Knowing and Voluntary Waiver.

The Government's response to both of the above claims asserted by Wosotowsky is that these claims were procedurally waived in Wosotowsky's Plea Agreement and at the Change of Plea Hearing conducted on October 6, 2011. More specifically, the Government states that Wosotowsky is barred from raising either claim due to the collateral attack waiver in his plea letter.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." U.S. v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001) (citing U.S. v. Mezzanatto, 513 U.S. 196, 201 (1995)). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." U.S. v. Mabry, 536 F.3d 231, 237 (3d. Cir. 2008), cert. den'd, 129 S.Ct. 2789 (2009) (citing Khattak, 273 F.3d at 561). A court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238.

Specifically, we must examine (1) the "knowing and voluntary nature" of the waiver, based on what occurred and what the defendant contends, and (2) whether the enforcement of the waiver would work a "miscarriage of justice." See id. at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-38 (citing Khattak, 273 F. 3d at 563). With regard to whether the Petitioner's waiver of his right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence was knowing and voluntary, we must, at a minimum, "[review] the terms of the plea agreement and change-of-plea colloquy and address their sufficiency." Mabry, 536 F.3d at 238.

Paragraph A12 of the Plea Letter states: "John D. Wosotowsky further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." [ECF No. 51 at 6]. Furthermore, the Government recited the waiver in the Plea Agreement in open court during the change of plea hearing and the Court drew Wosotowsky's attention to the waiver of his right to appeal or to attack his conviction under Section 2255 and stated he had no questions [ECF No. 51-1 and 51-2 at 4-5]. The dialogue which occurred during the change of plea hearing indicates that Petitioner knew what collateral appeal rights he was waiving and that he did so voluntarily.

As further support that Wosotowsky knew and understood the proceedings and the rights he was giving up the Court asked a series of questions to determine Wosotowsky's competency with regard to his plea: The Court asked if Wosotowsky, "Is there any representation made by the United States Attorney that's not absolutely clear in your mind?" [ECF No. 51 at 7]. Wosotowsky answered, "No, Your Honor." [ECF No. 51 at 7]. The Court further inquired, "You understand this business about the waiver of appellate rights or many of your appellate rights?" Mr. Wosotowsky answered, "Yes, Your Honor." [ECF No. 51 at 7 citing to Ex. B, Plea Hearing R. at 22]. Wosotowsky can neither complain that his waiver was unknowing or involuntary. Indeed, a unique provision in Wosotowsky's Plea Agreement was an exception carved out in his waiver that allowed his appeal with regarding to the 4-level enhancement under the securities law discussed above. This is clear evidence that Wosotowsky was aware of the significance of his waiver and his attorney's advocating on his behalf [ECF No. 51-2 at 3].

The inherent risk involved in entering a guilty plea is ultimately the unknowing outcome of the sentence the Judge will impose. A defendant weighs this risk against the potential sentencing outcome of a trial when considering his options. A defendant often considers a Judge's potential sentence utilizing the United States Sentencing Guidelines is less risky than the decision being put to a jury and, therefore, the defendant opts for a guilty plea. In this case, it is not a credible platform to overcome a knowing waiver of appellate rights during a change of plea hearing to simply say the Judge's rulings with regard to number of victims in this case and his rejection of a mental incapacity downward departure were, in the defendant's opinion, wrong. This outcome is the risk Wosotowsky took when he chose to plead guilty.

It is evident from the transcript of the change of plea hearing that Wosotowsky understood

the proceeding, had the ability to question things he didn't understand, accepted the facts of the case as presented by the Government, said he understood that the Court had the discretion to sentence him as it saw fit, [ECF No. 51-2 at 5], and he never indicated that he was unhappy with his counsel's advice. It is the Court's conclusion that Wosotowsky had a complete understanding of his plea agreement and his waiver of his right to bring a collateral appeal was knowing and voluntary. It is not enough to overturn a waiver for the Petitioner to simply disagree with the reasoning of the Court in its determination of the sentence. The Court's determinations of number of victims and mental capacity were reasonable and discretionary and there is no reason to believe a miscarriage of justice occurred in Wosotowsky's sentencing.

### b. Miscarriage of Justice.

The next step in our analysis is to determine whether enforcement of the waiver would work a miscarriage of justice in this case. See Mabry, 536 F.3d at 238. In so considering, a court is to use a "common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced." Id. at 242-43. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. See id. at 243. The United States Court of Appeals for the Third Circuit has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . ." Id. at 242-43 (quoting U.S. v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

In this case we see no evidence of a miscarriage of justice. The record is replete with opportunity for Wosotowsky to withdraw his plea of guilty with the recognition that he would not be able to appeal on the substantive grounds that affect his sentencing guideline range. As convincing support, it was stated on the record during the Change of Plea Hearing that "the parties have agreed there was more than ten victims in this case for a two-level enhancement." [ECF No. 51-2 at 3]. Wosotowsky can hardly argue now that there were only three victims based on his speculative argument that a deal was made between the Government and the investment companies. Clearly he had knowledge of the ten victim enhancement and, in fact, agreed to it. With regard to the argument made for the downward departure for his addiction, as noted above the Court has the discretion to sentence in the way it deems fit and this was clearly expressed to Wosotowsky during his Plea hearing [ECF No. 51-2 at 5-6]. We see no legitimate ground upon which Wosotowsky can say justice was not served in his case.

### C. Ineffective Assistance of Counsel

Wosotowsky takes issue with the representation of two attorneys that represented him in this matter, Michael Sherman ("Sherman"), who was retained, and Jay J. Finkelstein ("Finkelstein"), who was subsequently appointed. In summary, Wosotowsky claims that Sherman's errors altered the outcome of the case because they set the tone for the defense and that Finkelstein's attempts to vigorously defend him were ineffective so that there is a reasonable probability that but for these errors a different result in sentencing likely would have occurred [ECF No. 41-6 at 39].

The Court will address Wosotowsky's claims using the guidance provided by the court in Strickland v. Washington, 466 U.S. 668 (1994). Under the first prong of Strickland,

14

Wosotowsky must show that counsel's representation "fell below an objective standard of reasonableness." United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002) (citing Strickland, 466 U.S. at 688). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. See Strickland, 466 U.S. at 687-88. However, there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. To establish Strickland's second prong, Grant must show that counsel's deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### a. Sherman

With regard to Sherman, Wosotowsky asserts that Sherman absconded with $10,000 and was purely ineffective [ECF No. 46-1 at 32]. More specifically, he did not accompany Wosotowsky on critical interviews with postal and IRS investigators and abandoned Wosotowsky during interrogations. Wosotowsky claims as a result of Sherman's absence, MetLife's full involvement in the scheme was never investigated [ECF No. 46-1 at 32].

The Government informs us in its Response that at the time that Sherman represented Wosotowsky, Wosotowsky had already had his home searched, and he had confessed to his crimes. "The evidence seized in the search provided a roadmap of his lengthy schemes to steal." [ECF No. 51 at 13]. Therefore, Wosotowsky's culpability had been established through investigation and his own cooperation in the investigation. If the alleged activity of MetLife in the fraudulent scheme had been further investigated it does not follow that Wosotowsky's

criminal role would be mitigated causing a reduction in his sentence. In fact, Wosotowsky throughout his pleadings consistently admits his role in the scheme. There is no proximal relationship between Wosotowsky's level of guilt and any alleged guilt of MetLife. To the extent that MetLife was involved in the fraudulent scheme, it would have no bearing on Wosotowsky's sentence. Furthermore, Wosotowsky had been given full credit by the Government for his cooperation in the investigation. "There's been an extremely thorough investigation, in part with the help of Mr. Wosotowsky." [ECF No. 40 at 20]. Therefore, if Sherman's representation of Wosotowsky was, in fact, faulty it did not cause prejudice to Wosotowsky in his Change of Plea hearing or his sentencing. Therefore, the second prong of Strickland is not satisfied for a proper ineffective assistance of counsel claim.

### b. Finkelstein

As mentioned above, Wosotowsky believes that the victim insurance companies, MetLife, Alliance and Princor, made a "deal" with the Government, especially because MetLife reimbursed the victim families for their losses that were a result of Wosotowsky's scheme [ECF No. 46-1 at 18]. Related to this belief is Wosotowsky's claim that Brady Material[2] was withheld during proceedings. Namely that exculpatory evidence (evidence of this "deal") that was favorable to Wosotowsky's case never came to light [ECF No. 46-1 at 17]. Furthermore, Wosotowsky points to a statement made by Frank W. Heinrichs ("Heinrichs"), a representative of MetLife, while he was being examined on the witness stand during sentencing, which Wosotowsky believes was indicative of the alleged "deal" [ECF No. 46-1 at 21]. Heinrichs

---

2 Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the government is obligated to disclose exculpatory evidence without undue delay.

stated, "Before I go any further, I'd like to know if it is permissible for me to break my word that I had to sign at the end of the mediation that I would not defame in any way the insurance company?" [ECF No. 46-1 at 21].

In summary, Wosotowsky claims that Finkelstein was ineffective on several levels. First, Wosotowsky claims that Finkelstein should have demanded Brady Materials from the Government, which Wosotowsky felt would provide exculpatory evidence from which he would benefit. Second, Wosotowsky claims Finkelstein was ineffective when he did not cross-examine Heinrichs on the witness stand with regard to his "suspicious" statement. Wosotowsky asserts that Attorney Finkelstein should have cross-examined the witness on the meaning of that statement [ECF No. 51 at 14] and any other information regarding the "deal" made with the Government to pay restitution to the individual victims.

Wosotowsky also claims that during sentencing Finkelstein should have called to the witness stand Wosotowsky's treating psychologists to support the downward departure argument under 5K2.13 [ECF No. 46-1 at 38]. Wosotowsky admonishes Finkelstein for never speaking with Dr. Merrill, Wosotowsky's therapist. Wosotowsky claims that Finkelstein's lack of questioning deprived him of a meaningful defense [ECF No. 41-6 at 39].

The Court does not believe that Finkelstein's representation fell below a reasonable standard, nor do we believe that Finkelstein's representation of Wosotowsky prejudiced him in any way. Wosotowsky, by his own admission, states Finkelstein legitimately advocated on his behalf and that Wosotowsky is simply disgruntled with the outcome. "While Mr. Finkelstein made attempts to put forth a credible performance, not one of his considerations to benefit the defendant was granted by the court." [ECF No. 46-1 at 38]. Finkelstein put forth the arguments

17

for the Court's consideration that Wosotowsky now argues. Finkelstein motioned for a 5K2.13 downward departure and advocated for specific prison placement. Furthermore, he negotiated the terms of the plea agreement with Wosotowsky's blessing/signature. Simply, because Finkelstein did not utilize a strategy that Wosotowsky opines is best or simply because in the Court's discretion the defense motions were denied does not support a claim of ineffective assistance of counsel.

> With respect to the deficient performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* at 688, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[6] *Id.* at 690, 104 S.Ct. 2052.

Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005)

Thus, it is the Court's determination that Finkelstein acted in a reasonably prudent fashion when representing Wosotowsky in his plea of guilty and his sentencing and that the sentencing outcome was in no way a result of any alleged ineffective assistance by Sherman or Finkelstein.

**IV  Conclusion**

This Court having held, for the reasons set forth above, that Petitioner knowingly and voluntarily waived his right to file a collateral appeal and that enforcement of said waiver would

not work a miscarriage of justice in this case, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 46] is DENIED. Moreover, a Certificate of Appealability will not be issued with respect to this Motion. An appropriate Order will follow.

April 17, 2014

*Maurice B. Cohill*
Maurice B. Cohill, Jr.
Senior United States District Court Judge
Western District of Pennsylvania

cc: John D. Wosotowsky
USMS 33179068
P.O. Box 2000
Bruceton Mills, WV 26525
*pro se*